***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
The parties are bound by and subject to the North Carolina Workers' Compensation Act.
At all relevant times, an employment relationship existed between plaintiff and defendant.
A Form 22 was submitted from which an average weekly wage will be determined.
Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
Industrial Commission Forms and Filings relating to this case were stipulated into evidence as Stipulated Exhibit 2.
The issues before the Full Commission are:
 whether plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant;
whether plaintiff gave proper notice to defendant;
 if plaintiff sustained a compensable injury by accident, what compensation, if any, is due plaintiff?
7. The depositions of Dr. Landon Anderson and Dr. Bruce Phillips are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
At the time of the deputy commissioner hearing of this matter, plaintiff was fifty-seven (57) years old and a widow. Plaintiff has limited education and difficulty at times recalling events and providing a historical accounting relating to past circumstances.
Plaintiff has been an honest and trustworthy employee for the Bladen County Primary School for nineteen years. Plaintiff is the chief custodian for the school and responsible for housekeeping of the school facilities. Plaintiff's job duties include mopping, scrubbing, vacuuming, sweeping, dusting and other cleaning responsibilities for the school.
Plaintiff also had responsibility for cleaning the bathrooms. Cleaning the bathrooms would include scrubbing and spraying the bathroom floor as well as toilets and washing basins. When plaintiff was mopping, her mop bucket would leak water onto the floor.
On December 13, 2000, plaintiff had not been assisted with the maintenance of the building. Plaintiff had walked to the office to ask the secretary if any assistance would be arriving. The school secretary, Ms. Locamey, informed plaintiff not to worry about any remaining work. Plaintiff normally left her job with defendant-employer in order to arrive on time at her second job with Carolina Processing. Plaintiff worked for Carolina Processing on a part-time basis for three or four days per week from 7:00 p.m. until midnight. After being told by Ms. Locamey that she should complete her work and not be concerned that she had no assistance, plaintiff returned down the hallway to get a vacuum cleaner.
As plaintiff was walking down the middle hall to get the vacuum cleaner, plaintiff slipped in a misstep and felt as if something had exploded in her knee. Plaintiff felt great pain and had difficulty being able to walk. Plaintiff went to the teachers lounge and sat down for a few minutes. Plaintiff walked back to the principal's office to tell Ms. Locamey that something had happened, but Ms. Locamey had gone.
At the time of the accident, plaintiff felt that she had probably pulled a muscle.
Plaintiff attempted to complete the work that she had begun at the school and went home. Plaintiff continued to experience pain through the evening and into the next day.
Plaintiff returned to work the following morning and told Eddie Walters, the principal, that she had slipped and was uncertain exactly what had happened to her leg.
Plaintiff went to see Dr. Bruce Phillips, an internist in Elizabeth town. Dr. Phillips took a limited history from plaintiff that indicated she had twisted her right knee while working on December 13, 2000 and was unable to walk without hobbling after the injury. Dr. Phillips examined plaintiff and ordered x-rays.
Dr. Phillips received the radiologist's report and indicated the x-rays showed mild osteopenia and mid tricompartmental osteoarthritis, but no evidence of fractures or subflexations.
Dr. Phillips attempted to treat plaintiff's pain with anti-inflammatories and pain medication; however, since plaintiff indicated her knee was still in great pain and discomfort, Dr. Phillips referred plaintiff to an orthopedist for treatment and advised her to stay out of work until he could see her.
Dr. Phillips indicated that plaintiff injured her knee at work. Dr. Phillips also stated that plaintiff is a stoic person and could endure pain for several days prior to seeing a doctor. Dr. Phillips indicated as well that plaintiff is not a particularly good historian and would have difficulty recounting exactly what transpired at the time of the injury by accident.
Plaintiff was seen by orthopedist, Dr. Landon Anderson, in December 2000. Plaintiff reported to Dr. Anderson that she was the custodian for the local elementary school and twisted her right knee while working. Plaintiff told Dr. Anderson that she felt a crunch and popping when she twisted her knee. Plaintiff indicated the pain was so severe at the time of her injury that she felt nauseated.
Dr. Anderson performed an examination and verified plaintiff was having difficulty walking on her leg and had experienced tenderness in the kneecap on both sides.
Though Dr. Anderson ordered that an MRI be performed, it was not done for a long time. The MRI indicated the degenerative changes in the medial meniscus and a torn anterior cruciate and a tear in the anterior horn of the lateral meniscus.
Dr. Anderson initially treated plaintiff with anti-inflammatory medication. After the results of the MRI, Dr. Anderson recommended an arthroscope of plaintiff's knee. Plaintiff's knee arthroscope indicated degenerative tears in the lateral meniscus, arthritic changes in the patella and fraying and tearing of the anterior cruciate ligament.
Dr. Anderson has indicated an acute twist could cause this type of injury.
Dr. Anderson prescribed pain medications and therapy for plaintiff; however, therapy was not very successful.
Dr. Anderson has determined plaintiff most likely sustained a twisting type injury that contributed to the injury and decline of her knee.
Though plaintiff has had problems with her knee before, Dr. Anderson has indicated that a twisting as described by plaintiff on December 13, 2000 would result in plaintiff sustaining injuries such as tears in the lateral meniscus and fraying and tearing of the anterior cruciate ligament.
Plaintiff is not at maximum medical improvement and foresees a possible knee replacement in the future. Dr. Anderson has indicated the knee replacement may not completely be a satisfactory answer because of plaintiff's decreasing function and arthritis.
Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant on December 13, 2000.
Plaintiff's average weekly wage is $338.23.
Plaintiff gave adequate notice of her injury by accident to the best of her ability to the school principal on December 14, 2000.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
On December 13, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant to her right knee. N.C.G.S. § 97-2(6).
As result of her compensable injury by accident on December 13, 2000, plaintiff is entitled to temporary total disability compensation from December 14, 2000 and continuing until further order of the Commission. N.C.G.S. § 97-29.
Plaintiff gave proper notice of her injury by accident to her supervisor on December 14, 2000. N.C.G.S. § 97-22.
Plaintiff is entitled to receive medical treatment relating to her injury by accident to her right knee so long as necessary to effect a cure, give relief, or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
Defendant shall pay plaintiff total disability compensation based upon an average weekly wage of $338.28 from December 14, 2000 and continuing until further order of the Commission. Compensation that has accrued to date shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 3.
Defendant shall pay all medical expenses resulting from plaintiff's compensable injury by accident on December 13, 2000.
A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is hereby approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth check.
Defendant shall pay the costs due the Commission.
This the ____ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER